### Luis YORDAN, # 094439 Petitioner–Appellant,

v.

### Richard L. DUGGER, Secretary of Florida Department of Corrections, Robert Butterworth, Attorney General, State of Florida, Respondents–Appellees.

No. 88–3094.

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1990.

---

Before KRAVITCH and CLARK, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

The appellant Luis Yordan appeals from a district court order denying his motion for a writ of habeas corpus. 28 U.S.C. § 2254. Because the appellant was arguably denied effective assistance of counsel when he was advised to plead guilty to certain sexual battery charges in state court, and because the district court incorrectly concluded that the appellant's involuntary plea claim was procedurally barred, we *REVERSE* the district court's order and REMAND this case for further proceedings consistent with this opinion.

A.

*Facts and Background Information.*

On February 6, 1984, the State of Florida ("the State") filed a three-count information against the appellant. Count one charged that the appellant committed sexual battery against his daughter, a person under twelve years of age. *See* Fla.Stat. Ann. § 794.011(2). Florida law provides in relevant part that a person convicted of this offense "shall be punished by life imprisonment and *shall* be required to serve no less than 25 years before becoming eligible for parole...." *See* Fla.Stat.Ann. § 775.082(1) (emphasis added). Count two of the information charged that the appellant committed sexual battery against his other daughter, a person over twelve years of age. *See* Fla.Stat.Ann. § 794.011(5). Count three charged the appellant with attempted sexual battery with a person over twelve years of age. Fla.Stat.Ann. §§ 794.011(5), 777.04.

Initially, the state trial court appointed an assistant state public defender to represent the appellant. Prior to trial, however, the appellant retained private counsel and the assistant public defender withdrew

James M. Russ, Orlando, Fla., for petitioner-appellant.

Fleming Lee, Daytona Beach, Fla., for respondents-appellees.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation

from the case. According to the appellant, his privately-retained lawyer stated that persons convicted under § 794.011(2) become eligible for parole after serving between five and seven years in prison. Based on this alleged representation, the appellant agreed to negotiate a plea bargain with the state. Pursuant to this deal, the appellant agreed to plead guilty to counts one and three of the information. In exchange, the state agreed to drop count two of the information, run concurrently the sentences imposed for counts one and three, and drop charges against the appellant in an unrelated firearm possession case.

On July 2, 1984, the appellant appeared before the state trial court to enter his plea. After the court described the nature of the proposed plea agreement, the following colloquy ensued:

THE COURT: What say the state?

MR. WALLSH: Your Honor, the state is ready to proceed.

THE COURT: Are those [previously-made descriptions of the plea agreement] an accurate reflection of the discussions you've had?

MR. WALLSH: Yes, sir. It's also our understanding that upon acceptance of the plea to Count One, the court would impose the mandatory life imprisonment with twenty-five years and no parole.

THE COURT: And that Count Three will run concurrent with Count One.

MR. WALLSH: Yes, sir.

THE COURT: And [the firearm possession case] will be nol prossed.

MR. WALLSH: Yes, sir.

THE COURT: As well as Count Two of [the present case].

MR. WALLSH: That's correct.

THE COURT: What is your name?

THE DEFENDANT: Luis Yordan.

THE COURT: Did dou [sic] hear what the state said?

THE DEFENDANT: Yes, sir.

THE COURT: Is that an accurate reflection of what you want to do?

THE DEFENDANT: Yes, sir.

Transcript of Plea Colloquy, at 3:14–4:12. In response to the court's questions, the appellant indicated that he was alert and that he was not under the influence of any drugs or alcohol. *Id.* at 4:19–25. The appellant further indicated that he had had time to review his case with his lawyer, and that he was satisfied with the representation he had received. *Id.* at 7:9–23. Finally, the appellant admitted that he had committed the acts charged in counts one and three of the information. *Id.* at 10:25–11:1. Based on these representations, the court accepted the appellant's guilty plea and sentenced him to life imprisonment with a twenty five year minimum on count one, and to five years imprisonment on count three.

On May 20, 1986, the appellant filed with the state court a motion for post-judgment relief. The motion set forth two grounds of relief. First, the appellant maintained that his plea was involuntary due to the trial court's failure to conduct a legally sufficient pre-plea colloquy. Second, the appellant maintained that he had received ineffective assistance of counsel in violation of his Sixth Amendment rights. This second claim rested on at least seven allegations of constitutionally deficient representation; one such allegation provided that the appellant's lawyer had misrepresented the mandatory minimum sentence that could be imposed under § 794.011(2). The state trial court denied the motion without a hearing on July 15, 1986, and the state appellate court subsequently affirmed the trial court's decision.

On January 15, 1987, the appellant filed with the district court the instant petition for a writ of habeas corpus. The petition also set forth two grounds of relief. First, the appellant maintained that his plea was involuntary due to counsel's misrepresentation of the mandatory minimum sentence under § 794.011(2). Second, the appellant alleged that he had received ineffective assistance of counsel; he again argued that the misrepresented length of the prison term constituted one ground upon which relief could be afforded.

The district court denied the petition. Regarding the appellant's contention that his plea was involuntary, the court observed that the claim raised in the present petition "clear[ly] differed" from the claim raised in the prior state court proceedings. *See* Order, at 4 (M.D.Fla. Jan. 8, 1988) (noting that present petition based claim of involuntary plea on counsel's misrepresentation rather than trial court's deficient plea colloquy). The court therefore concluded that the appellant had defaulted procedurally on his involuntary plea claim, and that the default could not be excused under the "cause-and-prejudice" test delineated in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Turning to the ineffective assistance claim, the court concluded that the appellant's allegations were meritless. Specifically addressing the appellant's contention that his lawyer had misrepresented the mandatory minimum length of sentence, the district court stated: "[P]etitioner was independently appraised of the possible penalties by the state prosecutor and the state trial judge. The Petitioner indicated that he understood the court's explanation, and the Petitioner persisted in his decision to plead guilty." Order, at 9. Accordingly, the court rejected the appellant's ineffective assistance claim and denied the petition. No evidentiary hearing was held. This appeal followed.

### B.

#### *Discussion.*

1. *Ineffective Assistance of Counsel.*

■ We turn first to the appellant's claim of ineffective assistance of counsel. Such claims are, in general, governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court stated that to prevail on an ineffective assistance claim, a habeas corpus petitioner must prove: (1) that "counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, 104 S.Ct. at 2064, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694, 104 S.Ct. at 2068. When analyzing claims under this test, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *See Harich v. Dugger,* 844 F.2d 1464, 1469 (11th Cir.1988) ("strong presumption" of effective assistance); *see also Lancaster v. Newsome,* 880 F.2d 362, 375 (11th Cir.1989) (emphasizing that petitioner was "not entitled to error-free representation").

*Strickland*'s two-part test also applies where a prisoner contends that ineffective assistance led him or her to enter an improvident guilty plea. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In *Hill,* a state prisoner filed a petition for a writ of habeas corpus alleging that he had received ineffective assistance of counsel. To support this claim, the prisoner contended that his lawyer had misrepresented the portion of the sentence he would be required to serve before becoming eligible for parole. To determine whether these allegations stated a cognizable ineffective assistance claim, the Supreme Court ruled:

> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence set forth in *Tollett v. Henderson,* [411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)] and *McMann v. Richardson,* [397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)]. The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370–371. Because the prisoner failed to allege that he would have pleaded not guilty had counsel informed him of the proper sentence, the Court held that his ineffective

assistance claim did not pass the second, or "prejudice" part of the test. Accordingly, the Court affirmed the district court's decision to deny the petition.

The manner in which the *Hill/Strickland* considerations interact with guilty pleas was further explored in the recent Eleventh Circuit case of *Holmes v. United States,* 876 F.2d 1545 (11th Cir.1989). In *Holmes,* a habeas petitioner asserted that his lawyer had failed to inform him of the mandatory minimum sentence and the special non-parole feature of 21 U.S.C. § 848. The petitioner alleged that because he was not aware of these crucial provisions, he pleaded guilty to the § 848 crimes charged in the indictment. The petitioner therefore argued that his lawyer's ineffective assistance had produced the unwanted guilty plea. Without citing to *Hill,* the district court denied the petition.

The Eleventh Circuit reversed. This decision rested on a number of factors. First, the court suggested that legal representation does not pass constitutional muster where an attorney blatantly misstates to a client the penalty provisions of the crime with which the client is charged. *See Holmes,* 876 F.2d at 1552 (relying on *Strader v. Garrison,* 611 F.2d 61, 64–65 (4th Cir.1979)); *see also Hill,* 474 U.S. at 62, 106 S.Ct. at 372 (White, J., concurring in the judgment) ("The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis ... as such an omission cannot be said to fall within 'the wide range of professional competen[ce]' ... demanded by the Sixth Amendment"). Second, there existed documentary evidence which tended to prove that the petitioner's attorney had in fact misrepresented the nature of parole eligibility. *See Holmes,* 876 F.2d at 1553 n. 9 (in post-conviction letter to petitioner, attorney suggests that petitioner was not sentenced under § 848 and would, consequently, be eligible for parole). Third, the petitioner had averred that he would not have pleaded guilty had he been aware of the true state of affairs. Finally, the court noted that the district court had not applied the *Hill*-analysis when it ruled on Holmes's petition. The

court therefore concluded that "the record does not conclusively establish that the [petitioner] is entitled to no relief on his ineffective assistance of counsel claim." *Id.* at 1553 (footnote omitted). Accordingly, the court remanded the case for further proceedings.

■ The facts of the present case closely resemble those of *Holmes.* First, the appellant's lawyer allegedly stated that if the appellant pleaded guilty to count one of the information, he would become eligible for parole within five to seven years. Significantly, the record contains two personal letters which tend to prove that the appellant's lawyer in fact made this misrepresentation. *See, e.g.,* Translation of Letter of Luis Gomez, P.A. (July 25, 1984) (suggesting to the incarcerated appellant that there exist "other ways" to lessen appellant's sentence). Second, the appellant has emphatically alleged that he would not have pleaded guilty to the crime charged in count one had he known about the mandatory 25–year period of incarceration for such offenses. *See* Memorandum in Support of Petition for Writ of Habeas Corpus, at 22 (alleging that he had been informed of penalty provisions, "petitioner definately [sic] would have taken his chances on the uncertainties of the jury...."). Finally, the district court did not, when considering the appellant's petition, apply the two-part test delineated in *Hill.* Based on these factors, we therefore deem it provident, under *Holmes,* to remand the case for further consideration.

The procedure on remand shall take the following course. The district court should first determine whether the facts alleged in the appellant's petition, if true, would warrant relief under *Hill.* If, as we expect, the appellant surmounts this threshold burden, the district court should order an evidentiary hearing on the merits of the ineffective assistance claim. *See Slicker v. Wainwright,* 809 F.2d 768, 770 (11th Cir. 1987) (citing *McCoy v. Wainwright,* 804 F.2d 1196, 1199–1200 (11th Cir.1986)) ("If [petitioner] alleges facts that, if true, would entitle him to relief [under *Hill* ], the district court should order an evidentiary

hearing on the merits of his claim"). To prevail on the merits of this claim, the appellant must prove: (1) that the claimed misinformation was given to him by his attorney; (2) that his counsel's performance fell below an objective standard of reasonableness; and (3) that he would not have pleaded guilty and would have insisted on going to trial had he been properly informed about the penalty provisions attending the crimes charged in the information. *Holmes*, 876 F.2d at 1553; *see also Slicker*, 809 F.2d at 770 (to prevail under *Hill*, petitioner must, with respect to third factor, prove sufficient "prejudice" flowing from attorney's deficient conduct). When the hearing is concluded, the district court will weigh the evidence, make the necessary credibility determinations and, ultimately, determine whether the appellant has been afforded constitutionally adequate representation.

### 2. *Procedural Default.*

■ We now address the district court's determination that the appellant failed to raise in the state court proceedings the contention that his plea was involuntary. The district court correctly noted that in his state post-conviction relief petition Yordan emphasized the trial court's failure to interrogate him properly regarding the voluntariness of his plea, while in his federal petition Yordan has emphasized that his plea was involuntary as a result of misinformation provided by his attorney. We disagree, however, with the district court's conclusion that Yordan's federal claim is procedurally barred. A fair reading of the appellant's *pro se* brief in support of his state court post-conviction petition, along with the legal conclusions reached by the state court in denying that petition, shows that the substance of the appellant's involuntary plea claim was presented to, and ruled upon by, the state court. *See Cummings v. Dugger*, 862 F.2d 1504, 1507 (11th Cir.1989) (federal habeas corpus claim not procedurally barred when substance of claim is previously raised in state court); *Hutchins v. Wainwright*, 715 F.2d 512, 519 (11th Cir.1983) (even though issue is "obliquely stated" in state court proceed-

ings, issue not procedurally barred in subsequent federal proceedings where state court is alerted to the issue).

In the present case, the appellant argued in his state post-conviction petition that the state trial court erred when it failed to provide him with an interpreter; in relation to this argument, the appellant contended he did not understand, first, that the 25-year sentence was without parole and second, that he was pleading guilty to the full crime as charged, rather than a lesser included offense. R1–6–App.3A–6. In arguing that he received ineffective assistance of counsel, the appellant also stated that his attorney's advice led him to enter a plea that was not "intelligent, knowing and voluntary." R1–6–App.3A–20. Moreover, the state appellate court expressly recognized and then ruled upon Yordan's involuntary plea claim. In the portion of its opinion dedicated to Yordan's claim that the trial court failed to conduct a proper plea inquiry, the court first held that "[t]he record shows the Defendant understood the significance of his plea and entered it voluntarily." R1–6–App.3B–3. *See Cooper v. Wainwright*, 807 F.2d 881 (11th Cir.1986) (even though petitioner did not explicitly raise specific issue in state court petition, issue is not procedurally barred where state court considers and rules on issue). Therefore, we conclude that on remand that district court must consider the merits of the appellant's involuntary plea claim.

### C.

### *Conclusion.*

Based on the foregoing, we REVERSE the district court's order and REMAND this case for further proceedings consistent with the principles delineated in Part B of this opinion.