Carlos **GOODALL**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 99–CO–1063.

District of Columbia Court of Appeals.

Argued June 27, 2000.

Decided Sept. 28, 2000.

Thomas T. Heslep, Alexandria, VA, appointed by the court, for appellant.

Ayanna J. McKay, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr. and David L. Smith, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

PER CURIAM.

Goodall contends that the trial court abused its discretion by denying his post-sentence motion to withdraw his guilty plea without a hearing. Primarily, he asserts that in pleading guilty to manslaughter while armed,[1] he was misinformed by his attorney that he would be eligible for parole once he served the five year minimum term mandated by the "while armed"

statute, without regard to the actual minimum sentence imposed by the trial court. We conclude that Goodall is entitled to a hearing on this claim.

## I.

In connection with the shooting death of his uncle, Goodall was indicted on November 14, 1996, on four charges: first degree premeditated murder while armed, D.C.Code §§ 22–2401, –3202 (1996); possession of a firearm during a crime of violence (PFCV), D.C.Code § 22–3204(b); carrying a pistol without a license (CPWL), D.C.Code § 22–3204(a); and unauthorized use of a vehicle (UUV), D.C.Code § 22–3815. A jury trial was held July 9–17, 1997. Following Goodall's directed acquittal on the first degree murder charge, the jury hung on the lesser included offense of second degree murder while armed. A mistrial was declared.

In February 1998, Goodall and the government entered into a plea agreement whereby he would plead guilty to manslaughter while armed and CPWL in return for dismissal of the other charges. The plea letter incorporating the agreement stated that Goodall understood "that this crime [armed manslaughter] carries (a) a mandatory minimum prison term of five years, *which cannot be increased or decreased,* and (b) a maximum prison term of up to life incarceration" (emphasis added). At the plea entry proceeding on March 9, 1998, Goodall acknowledged under oath that he had committed the murder and had no legally cognizable defense.[2]

---

1. He also pled guilty to misdemeanor carrying a pistol without a license.

2. [COURT]: On June 13th, 1995, did you shoot and kill Mr. Fabian Baker in Apartment Three at a residence on Burbank South—on Burbank Street, Southeast in the District of Columbia?
  [APPELLANT]: Yes, I did.
  [COURT]: Okay. And, at the time you killed him were you acting in defense of yourself?
  [APPELLANT]: No.

[COURT]: Why—what was the motive for the killing, sir; why did you kill him?
  [APPELLANT]: There was no motive.
  [COURT]: What?
  [APPELLANT]: It was no motive. It was an argument.
  [COURT]: Argument?
  [APPELLANT]: Yes.
  [COURT]: Okay. What was the argument about?
  [APPELLANT]: Money.
  [COURT]: Money. And did you then take his body up to New Jersey and attempt to

During the inquiry required by Super. Ct. Crim. R. 11(c), the trial court asked whether the armed manslaughter plea included a mandatory minimum sentence, to which the prosecutor correctly replied, "Five years." *See* D.C.Code § 22–3202(a)(1). Asked whether Goodall understood that fact, his attorney responded:

Yes, Your Honor. And, the Court should have before it the sentencing letter signed by all parties. And, we made certain—we made certain to specify in that sentencing letter ... on the first page so that Mr. Goodall understands that [the] mandatory minimum prison term cannot be increased or decreased by Your Honor.

When the discussion returned to the matter of sentence, this colloquy ensued:

[COURT]: Well, [Mr. Goodall,] do you understand I haven't decided what sentence I'm going to impose yet. Do you understand that?

[APPELLANT]: All right. Yes.

[COURT]: You understand that the maximum sentence you could get in this case is up to life imprisonment. And, that I have to give you a mandatory minimum of at least five years. Do you understand that?

[DEFENSE COUNSEL]: Your Honor, just to clarify—

[COURT]: Yes.

[DEFENSE COUNSEL]:—*the mandatory minimum is* no—is *five years not at least five years.*

[COURT]: That's right. What I want him to understand is that he will have to serve, at least, five years—

[DEFENSE COUNSEL]: Right.

[COURT]:—because I'm required to impose that. I could impose a greater sentence. But, I cannot impose a sentence where he'll serve less than five years.

[DEFENSE COUNSEL]: That—

burn it as the Government's evidence indicates?

[COURT]: And, that includes the time he's already served. Do you understand that, Mr. Goodall?

[DEFENSE COUNSEL]: Let—let me rephrase it for Mr. Goodall because we've spent a lot of time on this.

He is just saying that *the first five years, just like we talked about, is mandatory minimum time.* And, then after that that's when you—that's when you're no longer serv[ing] mandatory minimum time.

[APPELLANT]: Okay.

[DEFENSE COUNSEL]: Okay.

[COURT]: Mr. Goodall, let me—let me ask you again. The Court in this case can impose a sentence of up to life imprisonment. The Court must, under the law, impose a sentence of at least five years. Other words, where you have to serve, at least, five years. Do you understand that?

[APPELLANT]: Yes, I do. [Emphasis added.]

The trial court then accepted the plea. On May 4, 1998, the court sentenced appellant to a prison term of *fifteen* years to life imprisonment for manslaughter while armed and a consecutive term of one year for CPWL. Under the sentence appellant received, he would be eligible for parole consideration only after thirteen and one-half years of incarceration, less time previously served. D.C.Code §§ 24–203(a), –208(b) (1996).

On August 27, 1998, Goodall filed a *pro se* "Motion to Withdraw Guilty Plea" pursuant to D.C.Code § 23–110 alleging ineffective assistance of counsel. He asserted that in pleading guilty he had been "deprived of information that would have allowed him to make a knowing and intelligent plea when counsel wrongly informed him that his parole eligibility would begin at the end of the mandatory minimum term of five years." Upon entering prison, he had been told "that the information and

[APPELLANT]: Yes, I did.

advice provided by his attorney regarding the definition and effect of the stipulated mandatory minimum term was incorrect." He then contacted his attorney, and she eventually informed him "that the information she provided regarding the explanation of the mandatory minimum term and the effect it had on his sentence—parole eligibility starting at the expiration of the mandatory minimum term, which the defendant placed particular emphasis on when he decided to plead guilty—was incorrect." Goodall therefore sought to withdraw his guilty plea and proceed to trial.

The government's response to the motion included an affidavit by Goodall's plea counsel in which she explained the advice she had given him concerning sentence:

> I advised Mr. Goodall that the five year mandatory minimum sentence would apply to his case, and that he would receive credit for the time he had already served on this offense in New Jersey.[3] I advised Mr. Goodall *that the parole board would not act before the five year mandatory minimum period was up, but after that he would be eligible for parole, depending upon the length of the sentence he received.*
>
> Obviously, I failed to convey clearly the sentencing ramifications of Mr. Goodall's plea. I do not think that I properly advised him that, if the Court imposed a sentence of 15 years to life on the armed manslaughter charge, he would be required to serve approximately 85% of the "bottom" before parole eligibility. I focused on the definition of "mandatory minimum" and advised Mr. Goodall that that mandatory minimum would first have to be served before the parole board could act. Mr. Goodall, I believe, understood me to be promising that the parole board would meet on his case at the end of five years and he might have to serve only five years on this offense. That is not what I intended to convey, but I realize that Mr. Goodall was sur-

prised by this sentence when he called me several times after sentence was imposed. I take responsibility for not explaining clearly enough to Mr. Goodall the sentencing ramifications of the instant plea.

Based upon counsel's assertion that she had told Goodall that his eligibility for parole, after expiration of the five-year mandatory minimum, would "depend[ ] upon the length of sentence he received," the government asserted that counsel had not misinformed Goodall about his sentence exposure, and that an attorney does not render ineffective assistance by simple failure to advise the defendant of the minimum time of confinement necessary before he may become eligible for parole.

The trial court denied appellant's motion to withdraw without a hearing. The court explained:

> [N]either the court nor counsel had an affirmative obligation to inform the defendant of the parole consequences of his plea, and the failure to render such advice, at least in the absence of counsel having imparted gross misinformation regarding the parole consequences, does not constitute ineffective assistance of counsel. Indeed both trial counsel's affidavit that she told defendant his eligibility for parole after serving the five year mandatory minimum would "depend upon the length of the sentence he received" and the court's plea colloquy with the defendant advising him that "I have to give you a mandatory minimum of *at least* five years" (emphasis added) make it clear that defendant was forewarned that he could serve more than five years before being eligible for parole.

## II.

■ We begin by rejecting Goodall's suggestion on appeal that the trial court failed in *its* responsibility by not advising him that, notwithstanding the minimum

---

**3.** Goodall had spent time in jail in New Jersey    following his arrest in this case.

sentence of five years prescribed by statute, the court had discretion to impose a greater minimum—indeed, one up to fifteen years. *See* D.C.Code § 22–3202(b). Super. Ct.Crim. R. 11(c)(1), by its terms, requires the court to advise the defendant pleading guilty of "[t]he nature of the charge to which the plea is offered, the *mandatory minimum penalty provided by the law, if any,* and the maximum possible penalty provided by law" (emphasis added). The trial court satisfied the Rule 11 requirements by informing Goodall of both the mandatory minimum sentence and the maximum sentence he could receive, and confirming that he understood both.

Goodall's primary contention, however, is that the trial court could not resolve without a hearing his assertion that his attorney misinformed him of when he would be eligible for parole, and that that misinformation amounted to ineffective assistance of counsel. He argues, as he did below, that he pled guilty in reliance on counsel's repeated and mistaken advice[4] that he would be eligible for parole after serving the statutory mandatory minimum sentence of five years—when in fact he must serve more than thirteen years before acquiring parole eligibility. We find merit in this claim of entitlement to a hearing.

### A.

In general, neither the trial judge nor defense counsel is required to explain the "collateral consequences" of a guilty plea to the defendant. *See Alpizar v. United States,* 595 A.2d 991, 994 (D.C. 1991); *Matos v. United States,* 631 A.2d 28, 31–32 (D.C.1993). "The consequences of a plea are direct when they have a definite and immediate impact on the range of defendant's punishment." *(Eric) Goodall v. United States,* 584 A.2d 560, 563 (D.C.1990). Those aspects which are "automatic" upon sentencing and "absolutely part and parcel to the sentence itself" are considered direct consequences of a guilty plea. *See Holland v. United States,* 584 A.2d 13, 15–16 (D.C.1990) (restitution is a direct consequence of a guilty plea; "Unlike typical examples of 'collateral' matters, . . . restitution . . . is an automatic result of the conviction in that there [is] no subsequent determination in a civil proceeding of the degree or amount of petitioner's liability. The result [is] absolutely part and parcel to the sentence itself."); *see also Cuthrell v. Director, Patuxent Institution,* 475 F.2d 1364, 1366 (4th Cir.) (consequence is "collateral" if it is not a definite, practical consequence of a defendant's guilty plea), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973).

Parole is neither definite nor immediate. Furthermore, parole eligibility does not affect the range of possible punishment, in that it does not affect either the statutory minimum time required to be served under the prevailing statute, nor does it affect the maximum possible incarceration the defendant faces for the given conviction. Accordingly, the Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts [under Rule 11]." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985);[5]

---

4. In his § 23–110 motion, Goodall asserted that "[c]ounsel's advice [had been] questioned by the defendant and the incorrect information . . . repeatedly provided."

5. The Supreme Court decision in *Hill* validated the reasoning of the Court of Appeals for the Second Circuit in *Hunter v. Fogg,* 616 F.2d 55 (2d Cir.1980). In *Hunter,* the court

reasoned that Fed.R.Crim.P. 11 did not require a court to inform a defendant of "the minimum portion of a sentence that might have to be served in custody," because "[w]hen a defendant is told of a maximum possible sentence, the very characterization of that term as a maximum implies that the sentencing judge has discretion to select a

*see also, e.g., Czere v. Butler,* 833 F.2d 59, 63 (5th Cir.1987) (holding parole eligibility is a collateral consequence to a guilty plea); *Brown v. Perini,* 718 F.2d 784, 788–89 (6th Cir.1983) (same); *Hunter, supra,* 616 F.2d at 61 (same); *Strader v. Garrison,* 611 F.2d 61, 65 (4th Cir.1979) (same). Recently, the United States Court of Appeals for the Third Circuit succinctly summarized the law as follows:

It is well settled that the Constitution does not require that a defendant be provided with information concerning parole eligibility. Thus, if [the appellant] were merely alleging that his constitutional rights were violated because he did not receive information concerning his eligibility for parole, his claim would be entirely without merit.

*Meyers v. Gillis,* 93 F.3d 1147, 1153 (3d Cir.1996). *See also Smith v. United States,* 116 U.S.App.D.C. 404, 409, 324 F.2d 436, 441 (1963).

Consequently, if all this case involved were a failure of counsel to inform Goodall of when he would become eligible for parole, the trial court would have been correct in denying his motion without a hearing.

**B.**

Numerous courts have held, however, that even though counsel has no duty to inform a defendant of parole eligibility (or other collateral consequences), once counsel undertakes to do so he must seek to avoid affirmatively misleading the client.

sentence anywhere up to the maximum." 616 F.2d at 61. The court found persuasive the Advisory Committee Note to the federal rule which indicated that "[Fed.R.Crim.P. 11] is not concerned at all with statutory provisions affecting the date of earliest release from confinement, whether that date is specified by statute or by the sentencing judge pursuant to statutory authority.... The Note ... illustrates several consequences, including the possibility of ineligibility for parole. 'Under the rule,' the Note continues, 'the judge is not required to inform a defendant about these matters, though a judge is free to do so....' " *Id.* at 60.

*See Strader, supra,* 611 F.2d at 65 ("though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel"); [6] *see also, e.g., James v. Cain,* 56 F.3d 662, 667 (5th Cir.1995) ("this Court and others have recognized that affirmatively erroneous advice of counsel as to parole procedure is much more objectively unreasonable than would be a failure to inform of parole consequences"); *Meyers, supra,* 93 F.3d at 1153–54 (collecting cases); *Yordan v. Dugger,* 909 F.2d 474, 478 (11th Cir.1990) (following cases which have held that "legal representation does not pass constitutional muster where an attorney blatantly misstates to a client the penalty provisions of the crime with which the client is charged"). *Cf. Gaston v. United States,* 535 A.2d 893, 898 (D.C. 1988) (holding defendant's decision to plead involuntary where the "decision to plead was materially misinformed" by counsel).

■ The cited federal authorities, together with our decision in *Gaston,* lead us to conclude that representation is constitutionally deficient if counsel provides materially erroneous information regarding the parole consequences of a plea, and the defendant relies upon it. *See Meyers, supra,* 93 F.3d at 1154; *Strader, supra,* 611 F.2d at 65. The formulation "materially

**6.** The *Strader* court analogized affirmative misinformation regarding collateral consequences of a plea to the more familiar (and more stark) errors associated with a trial itself. "If the effective assistance of counsel might have produced an acquittal, a conviction at the conclusion of a trial upon a plea of not guilty will be vacated if the defense lawyer's performance was below the range of competence expected of lawyers in the conduct of criminal trials. There is no reason the same rule should not be applied when a guilty plea is induced by a lawyer's ignorance and misadvice to a client." 611 F.2d at 64.

incorrect" recognizes that there is no "requirement [in law] that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Rather, the mis-advice must have been such as to "'f[a]ll below an objective standard of reasonableness,'" *Hill, supra*, 474 U.S. at 57, 106 S.Ct. 366 (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), and, in addition, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366.

### 1.

■ Analysis of whether Goodall's plea counsel gave him materially incorrect information—or, at the least, whether an evidentiary hearing is necessary to resolve that issue—must begin with the language that counsel had "made certain" would become part of the plea agreement. As she told the court at the plea proceeding, she had insisted on a statement that the mandatory minimum sentence could not "be increased or decreased" by the court. In and of itself, of course, this provision merely stated a truism, because the statutorily prescribed minimum (§ 22–3202(a)(1)) cannot be re-written ("increased or decreased") by the court. But the significance of the provision here is the question that it raises about what meaning counsel may have conveyed to Goodall when she insisted on including it in the written agreement. Did she erroneously induce him to believe that the five-year statutory minimum was both a floor *and a ceiling* on the time the court could require

Goodall to serve before he would be eligible for parole?

The transcript of the plea hearing does little to dispel a possible misapprehension by Goodall on this key point. When the trial court began by advising Goodall that "I have to give you a mandatory minimum of at least five years," counsel interrupted "just to clarify" and explained that "the mandatory minimum is no—is five years[,] not at least five years." And when the court later declared that "I could impose a greater sentence[, b]ut ... I cannot impose a sentence where he'll serve less than five years," counsel again asked to be allowed to "rephrase it for Mr. Goodall because we've spent a lot of time on this," and stated: "He [the judge] is just saying that the first five years, just like we talked about, is mandatory minimum time. And, then after that that's when you—that's when you're no longer serv[ing] mandatory minimum time."

If these statements reflect the advice counsel had been giving Goodall ("we've spent a lot of time on this"), the danger that he mistakenly believed he would be eligible for parole once he served the *mandatory* minimum of five years is palpable. Counsel nowhere added at the plea that the judge, in his discretion, could impose a greater minimum sentence; she did not neutralize, that is, the potential misunderstanding from her repeated suggestion that five years ("not at least five years") was the minimum time Goodall would have to serve ("the mandatory minimum time").[7] Moreover, in her affidavit filed in connection with the § 23–110 motion, counsel appeared to hedge about what she had told Goodall in regard to his parole eligibility. She acknowledged that she had not "properly advised him that, if the Court imposed a sentence of 15 years to life ... he would be required to serve approximately 85% of

7. Nor did the judge's own concluding statement that, while he could impose a sentence up to life imprisonment, he had to, "under the law, impose a sentence ... where you have to serve, at least, five years" eliminate the ambiguity in the information Goodall may have been receiving. Against the background of

counsel's statements, it is not obvious that Goodall would have understood the qualifier "at least" as referring to additional time he could be made to serve before parole eligibility, rather than to the minimum (*i.e.*, not less than) five years that the court was required to impose.

the 'bottom' before parole eligibility." What she had told him was

> that the five year mandatory minimum sentence would apply to his case, ... [and] that the parole board would not act before the five year mandatory minimum period was up, but after that he would be eligible for parole, depending upon the length of the sentence he received.

To a defendant unversed in the law, the meaning of this advice would hardly have been unambiguous. The government reads it as telling Goodall that the actual "length of the [minimum] sentence he received," not the statutorily prescribed minimum, would determine his parole eligibility. But telling him that "the parole board would not act before the five year mandatory minimum period was up" could equally have led him to believe that "after that [period] he would be eligible for parole," with his chances depending realistically "upon the length of the sentence he received"—*i.e.*, the maximum sentence. Once counsel undertook to advise Goodall of his parole eligibility in relation to the mandatory minimum sentence, she was obliged to be careful that he did not misunderstand that relationship by thinking the five-year term was both a floor *and* a cap on his disqualification from parole consideration. Goodall has raised sufficient concern that counsel fostered this misunderstanding to require a hearing on his Sixth Amendment claim.

### 2.

At the hearing, the trial court should take testimony from Goodall and his plea counsel[8] and decide, on that factual record, whether counsel provided Goodall with "affirmatively erroneous advice," *James, supra,* 56 F.3d at 667, that fell "below an objective standard of reasonableness." *Hill, supra,* 474 U.S. at 57, 106 S.Ct. 366. The inquiry may require a probing of how counsel herself understood the relationship between parole eligibility and mandatory minimum sentences, but, in any event, it must elicit what she told Goodall on the subject and what he understood as a result. Beyond that inquiry, Goodall must also convince the trial court, by a standard of reasonable probability, that "but for counsel's [assumed] errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366. Although Goodall insisted in his motion that "he placed strong, particular emphasis on information regarding parole eligibility when he decided to plead guilty," the Supreme Court has made clear that that inquiry "should be made objectively." *Id.* at 60, 106 S.Ct. 366. Thus, the trial court must apprise itself of all of the circumstances bearing on Goodall's decision to plead guilty,[9] including the genuineness of a belief on his part that he would realistically be considered for parole after five years in the circumstances of this homicide. See note 2, *supra.*

The order denying Goodall's § 23–110 motion is reversed and the case is remanded for an evidentiary hearing.

*So ordered.*

---

8. The trial court appointed new counsel to represent Goodall on the § 23–110 motion, and that counsel continues to represent him.

9. In her affidavit, his counsel stated that

> [b]esides the sentencing ramifications of entering a plea as opposed to going to trial, I also discussed with Mr. Goodall several other points that might influence his decision one way or another. Specifically, we discussed the fact that, at this first trial, the jury hung 11 to 1 for conviction, and we discussed the facts of the case itself. I

advised Mr. Goodall that he did not appear to have strong witnesses or evidence in his favor, and I believe he advised me that he would not wish to testify at his trial. I believe that Mr. Goodall understood that the government had a strong case against him, and we discussed how a case based upon "circumstantial" evidence could be just as compelling to the jury as a case where someone had actually witnessed Mr. Goodall commit a crime.