[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11096

_____

D.C. Docket Nos. 9:11-cv-81028-KAM; 9:09-cr-80058-KAM-1

MICHAEL JACK RIOLO,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 16, 2019)

Before TJOFLAT, MARTIN, and PARKER,* Circuit Judges.

MARTIN, Circuit Judge:

---

* The Honorable Barrington D. Parker, United States Circuit Judge for the Second
Circuit, sitting by designation.

Michael Jack Riolo is a federal prisoner who here appeals the denial of his 28 U.S.C. § 2255 motion to vacate his convictions and 293-month sentence based on his claims of ineffective assistance of counsel.  Specifically, Mr. Riolo argues he was denied an evidentiary hearing that the statute entitled him to have.  Mr. Riolo has alleged facts that, if true, may entitle him to relief.  We therefore vacate the denial of his § 2255 motion and remand with instructions to the District Court to conduct an evidentiary hearing.

## I.

In May 2009, the government filed an information charging Mr. Riolo with five counts of mail fraud in violation of 18 U.S.C. § 1341. These charges arose out of his operation of a purportedly fraudulent investment scheme.  Initially, Mr. Riolo entered a plea of not guilty.  But, in July 2009, he withdrew his not guilty plea and pled guilty to all five counts.

The plea agreement stated Mr. Riolo "acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of the Pre-Sentence Investigation by the United States Probation Office . . ., which investigation will commence after the guilty plea has been entered."  The plea agreement also set out the recommendations the government agreed to make at sentencing.  The agreement stated it was "the entire agreement and

2

understanding between the United States and the defendant." At Mr. Riolo's change-of-plea hearing, he acknowledged he had read the plea agreement, discussed it fully and completely with his attorney, understood all the terms and provisions, and entered into it freely and voluntarily.

At that same hearing, the District Court questioned Mr. Riolo about his understanding of the sentencing consequences of pleading guilty. The Court explained that the United States Probation Office would investigate the facts of the case, Mr. Riolo's role in the offense, and his background before calculating a projected advisory Sentencing Guideline range. Both Mr. Riolo's counsel and the government would have an opportunity to review and object to anything in the Probation Office's report. After hearing from the government and Mr. Riolo's counsel, the District Court said it would determine the correct advisory Guideline range and decide Mr. Riolo's sentence.

The District Court warned Mr. Riolo that "no one knows for sure what the correct advisory guideline sentencing range will be for your case, and no one knows for sure what the actual sentence will be for your case." The Court further clarified that even though Mr. Riolo's attorney may have told him "what she thinks or believes, in her best professional opinion, the advisory guideline sentencing range will turn out to be," the Court's decisions "may be different from what she has advised." Mr. Riolo said he understood. At the conclusion of the change-of-

3

plea hearing, the District Court found Mr. Riolo knowingly and voluntarily entered his guilty plea.

Before sentencing, the Probation Office prepared a Presentence Investigation Report ("PSI"). The PSI determined Mr. Riolo's criminal history category was I and his offense level was 38, for a recommended sentence of between 235 and 293 months. Mr. Riolo objected to two four-level enhancements. But, at sentencing, the District Court overruled both objections and agreed with the government that the Probation Office's proposed Guideline range was correct. The Court then imposed a top-of-the-Guideline-range sentence of 293 months.

Mr. Riolo later directly appealed his convictions and sentence. See United States v. Riolo, 398 F. App'x 568, 568 (11th Cir. 2010) (per curiam) (unpublished). Among other things, he claimed the government breached his plea agreement "by not following through on a promise that he would be sentenced based on an offense level of 30." Id. The panel found no evidence of such an agreement and affirmed. Id. at 570.

In September 2011, Mr. Riolo filed a pro se § 2255 motion to vacate his convictions and sentence, which advanced three claims, each supported by more than one ground. The crux of Mr. Riolo's motion was his contention that his plea counsel rendered ineffective assistance of counsel. Mr. Riolo recounts that his counsel assured him the government would recommend an offense level of 30 and

4

led him to believe 30 was the highest offense level he faced.  Had Mr. Riolo been sentenced based on an offense level of 30, his advisory Guideline range would have been 97 to 121 months.  U.S. Sentencing Guidelines Ch. 5, pt. A.  Mr. Riolo believed that if he were sentenced based on an offense level of 30, he would likely be released from prison in time to see his then-young children graduate from high school.  Instead, the District Court found Mr. Riolo's offense level was 38, which more than doubled his sentencing range.

Mr. Riolo says he pled guilty and conceded certain facts in the proffer about his offense conduct only because he believed that he would be sentenced based on an offense level of 30.  He also says his counsel failed to conduct an adequate investigation into the applicable offense level and "advis[ed] [him] to accept a plea agreement under the guise that the offense level had been predetermined."  Mr. Riolo argues his counsel's mistaken advice constituted ineffective assistance that caused him to plead guilty when he otherwise would not have.

Although Mr. Riolo acknowledged he told the District Court he understood the terms of his plea, in habeas proceedings he says that he did not in fact entirely understand.  In particular, he claims he did not fully understand the Probation Office's role in sentencing.  Based on communications with counsel, his reading of the plea agreement, and the District Court's questioning, he believed the parties would calculate and supply the Court with a proposed offense level and the

5

Probation Office would calculate only his criminal history category. Additionally, he says he understood the District Court's admonition that counsel could not be certain about his Guideline range and sentence as reflecting uncertainty about whether the Court might sentence him based on an offense level lower than 30.

In support of his motion, Mr. Riolo submitted (1) his own sworn affidavit; (2) a sworn affidavit from his wife; (3) a sworn affidavit from an attorney who represented him in a civil case related to his criminal case and who attended some of Riolo's meetings with his criminal attorney; (4) an email from Riolo's plea counsel telling him the government calculated an offense level of 30; and (5) Riolo's unsent letter to the District Court asking to withdraw his plea. The letter was drafted before sentencing but after Mr. Riolo received the PSI. At that time, he contacted his counsel to ask how the government could permissibly recommend an offense level of 38 when his counsel told him it had promised to stick to 30. His lawyer informed him the calculation came from the Probation Office. Mr. Riolo says this was "the first time [he] had any idea that probation had anything to do with the offense level calculation." He claims he considered asking to withdraw his plea, but he did not do so because counsel advised that the Court would not look favorably on such a request.

The government opposed Mr. Riolo's § 2255 motion. The government argued the plea agreement and plea colloquy made clear it did not agree to

recommend an offense level of 30.  Beyond that, the government pointed to the record as showing Mr. Riolo knowingly and voluntarily agreed to the terms of the plea agreement.  He told the District Court during the colloquy that he understood those terms and that defense counsel never told him the government agreed to do anything more than what was specified in the plea agreement.  Along with its opposition, the government submitted affidavits from Mr. Riolo's plea counsel and from a private investigator who worked on the case.  Both swore that counsel thoroughly advised Mr. Riolo about the sentencing process, including the role of the Probation Office.

The matter was referred to a Magistrate Judge, who recommended denying Mr. Riolo's motion.  In the first Report and Recommendation, the Magistrate Judge reasoned this Court had already rejected Mr. Riolo's ineffective assistance claim when it concluded on direct appeal that the government had not breached the plea agreement.  And the Magistrate Judge found no merit to Mr. Riolo's claim that his counsel had not adequately investigated his offense level.  Two Reports and Recommendations issued later also emphasized that the plea agreement and plea colloquy described how Mr. Riolo would be sentenced.[1]  In the Magistrate

---

[1]  The Magistrate Judge's first and second reports and recommendations did not address all of Mr. Riolo's claims.  See Riolo v. United States, 567 F. App'x 684, 688 (11th Cir. 2014) (per curiam) (unpublished) (vacating and remanding because the District Court's order adopting the Magistrate Judge's first report and recommendation addressed only some of Mr. Riolo's claims, in violation of Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992) (en banc)).  The Magistrate

Judge's view, Mr. Riolo's statements to the District Court that he understood the agreement made his new allegations "bare [and] conclusory."

The District Court overruled Mr. Riolo's objections and adopted the Magistrate Judge's Reports and Recommendations. In doing so, the District Court referred to the plea colloquy. The Court explained, among other things, that "[i]n view of [Mr. Riolo's] sworn statements at the time of his plea of guilty, [he] cannot now claim he relied on representations not contained in his plea agreement as the basis for what caused him to plead guilty."

This is Mr. Riolo's appeal.

## II.

Section 2255 requires a court to "grant a prompt hearing" on a petitioner's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, "[a] petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." Hernandez v. United States, 778 F.3d 1230, 1232 (11th Cir. 2015) (quotation marks omitted). "But a district court need not hold an evidentiary hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." Id. (alteration

---

Judge ultimately issued three Reports and Recommendations, all of which were adopted by the District Court.

adopted and quotation marks omitted).  Courts construe a § 2255 motion filed by a pro se litigant more liberally than one filed by an attorney.  Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002).

This Court reviews a "district court's denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion."  Winthrop-Redin v. United States, 767 F.3d 1210, 1215 (11th Cir. 2014).  "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous."  Id. (quotation marks omitted).

## III.

Mr. Riolo argues the District Court abused its discretion by failing to hold an evidentiary hearing on his § 2255 motion.  He believes he was entitled to an evidentiary hearing because he supported his ineffective assistance of counsel claims with detailed factual allegations, third-party affidavits, and other evidence. See United States v. Sanderson, 595 F.2d 1021, 1021 (5th Cir. 1979) (per curiam) (holding a defendant who "offers specific factual allegations supported by the affidavit of a reliable third person" may refute testimony given under oath when pleading guilty and is entitled to a hearing on his allegations).[2]  The government

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.  Id. at 1209.

disagrees.  It argues Mr. Riolo was not entitled to an evidentiary hearing because the record shows he understood the sentencing consequences of his plea and his new third-party evidence is contradicted by the record.  We conclude the District Court erred by not holding an evidentiary hearing because the record does not "conclusively show" his claims fail.[3]

To establish he was entitled to an evidentiary hearing, Mr. Riolo "had to allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance."  Hernandez, 778 F.3d at 1232–33; see also Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984) (establishing the standard for an ineffective-assistance-of-counsel claim).  "Counsel performed deficiently if her representation fell below an objective standard of reasonableness."  Hernandez, 778 F.3d at 1233 (quotation marks omitted).  "And prejudice occurred if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (quotation marks omitted).  In the context of a guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a

---

[3] To the extent Mr. Riolo's § 2255 motion claims the government breached his plea agreement by failing to recommend an offense level of 30, he has offered nothing more than conclusory allegations to support this claim.  Therefore, the District Court properly denied his motion as to any breach-of-plea agreement claim.  See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is not entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics." (quotation marks omitted)).

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985) (quotation marks omitted).

Mr. Riolo has alleged facts that, if true, may prove his counsel's advice was deficient. Courts have held that, under certain circumstances, misadvice about the sentencing consequences of pleading guilty may constitute deficient performance. For example, according to one circuit, a petitioner "may prevail on the first prong of the Strickland test if he/she can establish that counsel failed to understand the basic structure and mechanics of the sentencing guidelines and was therefore incapable of helping the defendant to make reasonably informed decisions throughout the criminal process." United States v. Washington, 619 F.3d 1252, 1260 (10th Cir. 2010). And other courts—including this one—have remanded cases for an evidentiary hearing where a petitioner alleged counsel misinformed him about his sentencing exposure. See, e.g., United States v. Herrera, 412 F.3d 577, 581 (5th Cir. 2005) ("An attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial."); Yordan v. Dugger, 909 F.2d 474, 478–79 (11th Cir. 1990) (remanding with instructions for the District Court to conduct an evidentiary hearing if the Court determined that the petitioner's claim he pled guilty upon

misadvice by counsel would, if true, warrant relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (same).

According to Mr. Riolo's pro se § 2255 motion, his counsel "never informed [him] that the probation office would conduct [its] own independent calculation of the offense level for the court." He says his counsel instead advised him to "accept a plea agreement under the guise that the offense level had been predetermined" by the parties. He supports his allegations with claims from his wife that counsel "specifically represented that she had spoken to the prosecutor and confirmed his recommendation of a ninety-seven (97) month sentence and therefore there was no possibility of him recommending a higher sentence." Mr. Riolo's civil attorney's affidavit also corroborates his account. The civil attorney swears he attended meetings about Mr. Riolo's criminal case and, based on those meetings, he "was under the impression that the maximum offense level Michael Riolo would be exposed to was level 30." Although this Court has not squarely decided whether misadvice about a defendant's maximum offense level is deficient performance, Mr. Riolo's allegations suffice at this stage. See Holmes, 876 F.2d at 1553 (remanding for the district court to assess prejudice after an evidentiary hearing where the record did not conclusively eliminate the possibility of relief on the petitioner's ineffective-assistance claim).

Mr. Riolo also alleged facts that, if true, may prove he was prejudiced by his counsel's deficient performance. Mr. Riolo's own affidavit and affidavits submitted by his wife and civil attorney all state he would have proceeded to trial if counsel had not assured him his offense level would be no higher than 30. The plea-withdrawal letter Mr. Riolo drafted, but never sent, also supports these allegations.

While the District Court's thorough plea colloquy may give reason to doubt Mr. Riolo's new allegations, it does not defeat his claims at this stage. "[T]here is a strong presumption that the statements made during the [plea] colloquy are true," but that presumption "is not insurmountable." United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). In Sanderson, our predecessor court explained, "[o]rdinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty," but "where the defendant offers specific factual allegations supported by the affidavit of a reliable third person, he is entitled to a hearing on his allegations." 595 F.2d at 1021 (footnote omitted). Mr. Riolo here offers detailed factual allegations supported by third-party affidavits and other evidence. He has also explained that he did not properly understand the significance of several questions the judge asked during the change-of-plea hearing. This is because he heard the Court's admonitions about the uncertainty of

13

his sentence and Guideline range through the filter of the (mis)advice he says he got from his lawyer about his maximum offense level.

We cannot say Mr. Riolo's allegations at this stage are patently frivolous, based on unsupported generalizations, or affirmatively contradicted by the record. Neither can we say the record conclusively shows he is entitled to no relief. Section 2255 therefore requires a hearing on his claims.[4]

Although we conclude Mr. Riolo is entitled to an evidentiary hearing, we express no opinion about the merits of his claims.  As our predecessor court spelled out, "[t]he point is that we do not know, nor does the District Court know, whether [Mr. Riolo's] allegations are indeed true and whether, as a consequence, he was unconstitutionally deprived of reasonably effective assistance of counsel." Friedman v. United States, 588 F.2d 1010, 1017 (5th Cir. 1979) (per curiam).

**VACATED AND REMANDED.**

---

[4] We need not address Mr. Riolo's argument that in applying the prejudice prong of Strickland, the Court improperly focused on whether he would receive the same sentence and not on whether he would have insisted on going to trial.  See Hill, 474 U.S. at 59 ("[T]o satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (quotation marks omitted))  On remand, the District Court will have a fresh opportunity to consider—in light of the record after an evidentiary hearing—whether Mr. Riolo suffered prejudice.