A01A0118. HINES v. THE STATE.
(548 SE2d 642)

JOHNSON, Presiding Judge.

After a jury trial, Larry Hines was convicted of two counts of aggravated child molestation and two counts of child molestation for

---

offenses committed against his six-year-old stepson, A. S. He was also convicted of one count of child molestation for an act committed against a neighbor's six-year-old child, R. M. Hines appeals, asserting that the trial court erroneously admitted hearsay evidence, that in its jury charge the trial court expressed its opinion as to what had been proven, and that he was denied effective assistance of counsel. Because each of the enumerations is without merit, we affirm the convictions.

1. Hines contends the trial court committed reversible error by allowing R. M.'s mother to testify regarding what her son told her about the molestation of A. S. He urges that the alleged error was harmful because there was no other evidence corroborating A. S.'s allegations that Hines molested him.

At trial, the state called R. M.'s mother to the stand. She testified that R. M. told her that he and A. S. were playing at Hines' house when Hines pushed both boys' faces down onto his lap. Hines' penis was outside of his clothing at the time. She added that A. S. came into her house immediately afterward and told her the same story.

When the trial court called R. M. to testify, he refused to enter the courtroom. The trial court excused the jury from the courtroom. The prosecutor informed the court that the child was crying, did not want to be there, did not want to answer questions, and, in the prosecutor's opinion, "cannot answer questions in this environment." The trial judge asked that R. M. be brought to the bench so he could talk to the child. The trial judge asked R. M. his age. In response, R. M. held up six fingers. The trial court noted for the record that the child was crying. Stating that he was deciding the issue as a human being, a judge, and a father, the trial judge announced that the child did not have to testify. The court asked the child if he wanted to get up on the stand and say anything. The child shook his head negatively. The trial court asked defense counsel if he wanted to establish anything for the record. After voicing his uncertainty as to whether the child should be forced to testify, defense counsel remarked that the child was very upset and "having seen him like this, . . . and having seen him answer your questions, we don't want to ask him any questions."

Under OCGA § 24-3-16, a child's out-of-court statements are admissible if, among other things, the child is available to testify in the proceedings.[1] The term "available" denotes a witness who can be confronted and cross-examined.[2] A child who is unable to take the stand obviously cannot respond to opposing counsel's questions and

---

[1] *Woodruff v. Woodruff*, 272 Ga. 485, 486 (1) (531 SE2d 714) (2000); *Lang v. State*, 201 Ga. App. 836, 837 (1) (412 SE2d 866) (1991).

[2] *Lang*, supra.

is unavailable within the meaning of the statute.[3]

In this case, the child would not take the stand and was not made available for confrontation and cross-examination. Since the result of the trial court's ruling was that Hines could not confront and cross-examine the child, he was not available to testify within the meaning of OCGA § 24-3-16.[4]

Contrary to the state's argument, this case is unlike those cases in which the child actually took the stand and could be examined and cross-examined, but was merely unresponsive, inarticulate, or did not corroborate the testimony of other witnesses.[5] The trial court decided, and we certainly understand the reason for the ruling, that the distraught child should not be forced to take the stand. However, because the trial court excused the child without him ever being sworn and examined as a witness, he was not available to testify within the meaning of the statute, and his mother's testimony regarding his statements to her were therefore inadmissible.[6]

Even so, reversal is not required because the evidence at issue was admitted through several other witnesses. For instance, a police detective testified that A. S. told her that Hines threw him on the bed, pulled down A. S.'s underwear, rubbed the child's penis with his hand, turned him onto his stomach, and put his penis in the child's anus. A. S. also told the detective that Hines had put his penis in A. S.'s mouth. The child gave the same testimony in a videotaped interview which was played for the jury.

A. S. testified that he told the police officer the truth about what Hines had done to him. The child further testified that Hines pulled the children's faces onto his exposed penis. And A. S. told his mother the day of the incident that Hines put the children's faces in his lap while his penis was exposed.

Hines testified that he pulled both children's faces onto his lap while he had on boxer shorts and that the children might have rubbed up against or seen his penis. He also testified that while playing with A. S., he inadvertently pulled down the child's pants and accidentally rubbed his penis.

Inasmuch as the testimony in question was merely cumulative of other testimony properly admissible under OCGA § 24-3-16, any error in this regard was harmless.[7] We note that, contrary to Hines'

---

[3] *Woodruff*, supra.
[4] See *Lang*, supra at 837-838 (1).
[5] See, e.g., *Jenkins v. State*, 235 Ga. App. 53, 55 (1) (b) (508 SE2d 710) (1998).
[6] See *Lang*, supra.
[7] See *Letlow v. State*, 222 Ga. App. 339, 345 (4) (474 SE2d 211) (1996).

contention, it was not necessary that the child's testimony be corroborated.[8]

2. Hines complains that the trial judge's use of voice tone, inflection, and pauses during the jury charge constituted an expression of his opinion and a comment on the evidence in the case. To support his contention, Hines introduced into the record at the hearing on the motion for new trial, and caused to be included in the appellate record, the court reporter's audiotape of the court's jury charge.

An appellant's contentions that he was prejudiced due to a trial judge's vocal emphasis, facial expressions, or other bodily demeanor are reviewable on appeal if the appellant has completed a record which will enable an appellate court to review his contentions.[9] According to our Supreme Court, the record is reviewable if the trial attorney called as witnesses people who were in the courtroom at the time of the incident in question and questioned them as to the trial judge's demeanor.[10]

Hines does not cite, nor have we found, any authority addressing the question of whether an appellant can preserve the issue of the trial court's manner of speech by including in the record the court reporter's audiotape. We hold that the inclusion of such a tape can be sufficient to preserve this issue. However, Hines does not direct our attention to any particular parts of the jury charge and fails to explain how the trial court's use of tone, inflection, or pauses might have indicated to the jury the court's opinion as to what had been proven. Indeed, we have listened to the tape and found nothing in the manner in which the trial court gave its charge which could reasonably be considered prejudicial against Hines.

Moreover, the trial court specifically told the jury at the end of its charge:

> [A]s some of you have heard me say before this week, it is not my role or my decision to make in this case. Nothing that I have said or done, *voice inflection*, . . . or anything that I may have done . . . was not meant to hint, suggest, intimidate [sic], cajole, persuade, to try to convince you what to do in this case.

(Emphasis supplied.) Under the circumstances, Hines has not shown reversible error.

3. During his closing argument, the prosecutor stated that because Hines is capable of molesting his own stepson and any other child that comes into his home, the thought that Hines could be

---

[8] See *Vickers v. State*, 241 Ga. App. 452, 453 (527 SE2d 217) (1999).
[9] *Milhouse v. State*, 254 Ga. 357, 358-359 (2) (329 SE2d 490) (1985).
[10] Id. at 359 (2).

acquitted frightens him. Hines says that his trial attorney's failure to object to this argument warning the jurors of his "future dangerousness" shows that he received ineffective assistance of counsel.

Hines is correct that it is improper for a prosecutor to argue during the guilt-innocence phase of a criminal trial that if found not guilty, a defendant poses a threat of future dangerousness.[11] However, in this case, defense counsel's failure to object (or decision not to object) to the prosecutor's comments did not constitute ineffective assistance of counsel.

At the hearing on the motion for new trial, Hines' trial counsel testified that he knew that the state's "future dangerousness" argument was improper, but that he did not want to call the jury's attention to the issue by objecting. According to trial counsel, it was "just a judgment call," a "strategic position" not to object to the argument. "Trial strategy and tactics do not equate with ineffective assistance of counsel."[12] The fact that Hines and his present counsel disagree with the decision made by trial counsel does not require a finding that Hines' original representation was inadequate.[13]

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 23, 2001.

*William J. Mason*, for appellant.

*J. Gray Conger, District Attorney, Julia A. Slater, Assistant District Attorney*, for appellee.

---

[11] See *Wyatt v. State*, 267 Ga. 860, 864 (2) (b) (485 SE2d 470) (1997).

[12] (Punctuation omitted.) *Powell v. State*, 210 Ga. App. 409, 413 (6) (b) (437 SE2d 598) (1993).

[13] See id. at 414.