S01A0016. SMITH v. GAITHER.
(549 SE2d 351)

CARLEY, Justice.

Thomas Smith was indicted for burglary, and the court appointed an attorney to represent him. Counsel negotiated a guilty plea agreement which provided that both he and the trial court would recommend to the State Board of Pardons and Paroles (Board) that Smith be considered for boot camp. Smith accepted the agree-

ment and pled guilty. When he was transferred to the state prison system, however, the Board determined that he was ineligible for boot camp because he had a prior conviction in South Carolina. Smith then brought this action seeking a writ of habeas corpus, asserting that defense counsel was ineffective because he provided misinformation regarding eligibility for boot camp and that, had Smith known of his ineligibility, he would not have entered the guilty plea. The habeas court found no merit in the claim that Smith's Sixth Amendment right to effective counsel was violated, and denied habeas relief. Smith filed a timely notice of appeal and application for a certificate of probable cause. We granted the application to consider whether, under the circumstances, trial counsel's representation of his client was constitutionally deficient.

"In every criminal case, there is a strong presumption that trial counsel provided effective representation for the defendant. [Cit.]" *Flanigan v. State*, 269 Ga. 160, 162 (2) (d) (496 SE2d 255) (1998). After conducting an extensive and thorough hearing, the habeas court in this case found that Smith failed to rebut this strong presumption. "[W]e must uphold that finding on appeal unless it is clearly erroneous. [Cit.]" *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999).

The habeas court expressly found that Smith's trial lawyer "did *not* promise [him] that he was going to boot camp and would be guaranteed release within 90 to 120 days." (Emphasis supplied.) At most, the record shows that defense counsel agreed to recommend that Smith be admitted into boot camp. It is undisputed that, consistent with that promise, Smith received the attorney's and the trial court's recommendation. However, through no fault of his attorney, Smith was not sent to boot camp because the Board found him not to be eligible for consideration because of a prior conviction.

Smith's ineligibility was not based upon any statutory provision, regulation or some other source readily available to a practicing attorney. Smith was ineligible pursuant to the Board's unpublished rules. Smith's *habeas* attorney *subsequently* became aware of the rules, but only by communicating directly with the Board. To show ineffectiveness, however, a lawyer's performance must be unreasonable "under the circumstances confronting [him or her] before and during the trial, *without resorting to hindsight*. [Cits.]" (Emphasis supplied.) *Turpin v. Lipham*, 270 Ga. 208, 210 (3) (510 SE2d 32) (1998). Of course, the habeas attorney had every reason to investigate and determine the reason why Smith was not accepted into boot camp. However, the habeas court had to decide whether it was unreasonable during the pre-trial plea negotiations for trial counsel to rely upon statutes and other readily available authority as the basis for his agreement to recommend that Smith be sent to boot camp.

An attorney has no reason to be concerned about the effect of a client's prior convictions on the representation unless and until he or she learns of their existence. The evidence does not demand a finding that Smith's counsel knew that Smith had a criminal record. Smith contends that if his counsel had discovered the requirements for boot camp, then he would have inquired whether Smith had a prior conviction. However, the record does not demand or even authorize a finding that counsel made no effort to discover his client's eligibility. The record shows that he diligently represented Smith, and the relevant question is whether his otherwise exemplary effort was unreasonable simply because counsel did not discover an unpublished Board rule. If an attorney knows of his client's prior conviction, it might be unreasonable for him to fail to look beyond the applicable statutory and regulatory authority to determine the potential effect on sentencing. In the absence of such knowledge, however, Smith's attorney was not constitutionally deficient simply because he did not make an independent effort to determine whether the Board, in the exercise of its discretion, would decline to consider his client to be eligible for boot camp.

The record shows that defense counsel was very circumspect in limiting his promise to a recommendation that Smith attend boot camp. A defendant has no right to determine where he will serve his sentence. The Board has decided that those defendants with prior convictions should not be admitted into boot camp. Smith's attorney performed in accordance with his promise, the Board adhered to its unpublished policy, and Smith must now serve his sentence at an appropriate facility. The habeas court's finding that, under the circumstances as they actually existed, there was no violation of Smith's right to counsel is not clearly erroneous.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., and Sears, P. J., who dissent.*

SEARS, Presiding Justice, dissenting.

Because the record shows that Smith's plea counsel misinformed Smith regarding his eligibility for boot camp, and because the record demonstrates that eligibility for boot camp was a significant factor to Smith in determining whether to plead guilty, I conclude that Smith's counsel acted unreasonably in failing to learn the requirements for boot camp and in communicating to Smith that he was eligible for consideration for boot camp. I also conclude, however, that the trial court's findings on prejudice were insufficient to permit appellate review, and I would therefore remand the case to the trial court for it to enter appropriate findings and conclusions on the issue of prejudice.

In bringing this habeas action, Smith contended that his plea counsel misinformed him about his eligibility for the boot camp program; that consideration for boot camp was an important factor to him in determining whether to plead guilty; and that if he had known that he was ineligible for boot camp, he would not have pled guilty. In this regard, Smith introduced an affidavit into evidence from the Assistant Director of Clemency for the State Board of Pardons and Paroles, who stated that to be eligible for boot camp, (1) an inmate must be 35 years of age or younger; (2) his sentence must be ten years or less; (3) the inmate must be incarcerated for a nonviolent crime; and (4) the inmate can have no prior incarcerations and no significant prior criminal record. Of course, Smith was ineligible even to be considered for boot camp because of his prior conviction in South Carolina.

Both the habeas corpus transcript and the plea transcript reveal the importance that Smith attached to being considered for boot camp, and that Smith's plea counsel communicated to him that he was eligible for consideration for boot camp. At the habeas corpus hearing, Smith testified that before accepting the guilty plea, he informed his counsel that the only way that he would accept a plea to burglary was if the trial court would recommend that he be considered for boot camp. He added that he was told that he would be eligible for boot camp, and that his attorney promised him he would be sent to boot camp and would be out on parole after 90 to 120 days. On cross-examination, Smith stated that it was wrong to tell him "that I've got a chance to go to boot camp and then I find out when I get up there that I never even had a chance." Smith maintained that he would not have pled guilty to the charge had he known he was ineligible for boot camp. Smith further testified at the hearing on his habeas petition that he did not want to plead guilty to burglary because the house that he was accused of entering was a house in which he had lived until two weeks before the burglary and because he broke into the house to retrieve some of his own personal belongings. In this regard, Smith testified that he initially rejected an offer by the State to plead guilty to burglary in exchange for a sentence of ten years because of the circumstances of the crime, but that once the State offered boot camp, he agreed to plead guilty. Smith added that he was told on several occasions that he was eligible for boot camp because his co-defendant had pled guilty and had been placed in boot camp and was out on parole. Smith also testified that his plea counsel told him that he would be treated the same way as his co-defendant. In addition, Smith testified that he wanted to go into the boot camp program because he had a prior conviction in South Carolina and was out on parole in that state, and the authorities in that state had informed him that if he could get into a boot camp program,

they would not seek to revoke his parole.

A copy of the transcript of the hearing on Smith's guilty plea was introduced into evidence at the hearing on Smith's habeas petition. A colloquy that occurred during the hearing on Smith's guilty plea underscores the importance that Smith attached to his eligibility for boot camp. After the trial court stated that he would sentence Smith to five years to serve, followed by five years on probation, the court stated that a condition of the plea was that Smith serve a period of time at boot camp. The court then asked Smith if he understood his sentence, and Smith replied that he did not, and asked whether the sentence was for five years to serve, followed by time at boot camp. Smith's counsel then stated that the court might want to restate its sentence, that the plea was that Smith would receive five years to serve, but that he would be considered for boot camp. The trial court then stated that it would recommend that Smith be placed in boot camp. This colloquy demonstrates that Smith, Smith's counsel, and the trial court all understood that Smith desired to be considered immediately for boot camp once he was transferred to the state prison system.

At the hearing on Smith's habeas petition, Smith's plea counsel testified that he always went over plea agreements with clients; that he did not promise Smith that he would go to boot camp or that he would be released on parole within 90 to 120 days; and that he always told clients seeking boot camp that it was strictly a recommendation for boot camp and not a certainty that the client would be accepted for boot camp. Smith's plea counsel also testified that if he had known that Smith was ineligible for boot camp, he would have discussed that fact with him.

1. A defendant who contests his guilty plea on the ground that he received ineffective assistance of counsel has the burden of meeting the two-part test of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).[1] In this regard, he must show that his attorney's representation fell below an objective standard of reasonableness and that, if not for counsel's errors, "there is a reasonable probability that . . . he would not have pleaded guilty and would have insisted on going to trial."[2]

As for an attorney's deficient performance during a guilty plea, this Court has held that an attorney is not ineffective if he simply fails to inform a defendant of a collateral consequence of a plea, such as the fact that the defendant is ineligible for parole.[3] Here, however, Smith does not assert that his attorney simply failed to inform him

---

[1] *Hill v. Lockhart*, 474 U. S. 52, 59 (106 SC 366, 88 LE2d 203) (1985).

[2] *Hill*, 474 U. S. at 59. Accord *Williams v. Duffy*, 270 Ga. 580, 581 (513 SE2d 212) (1999).

[3] *Duffy*, 270 Ga. at 581.

that he would be ineligible for boot camp. Instead, Smith asserts that his attorney misled him into believing that he would be eligible to be considered for boot camp. Some courts make a distinction between an attorney who fails to inform his client of the consequences of a plea and an attorney who provides misinformation about those consequences, concluding that an attorney who provides misinformation regarding the collateral consequences of pleading guilty can be held to have provided ineffective assistance of counsel.[4] I agree with the reasoning of these cases, and would hold that an attorney provides constitutionally deficient representation if he misinforms or misleads his client regarding the collateral consequences of a plea and if, under the circumstances of the case, the misadvice falls below an objective standard of reasonableness.

In the present case, I conclude that the record unequivocally shows that Smith considered his eligibility for boot camp a significant factor in pleading guilty; that Smith's counsel communicated to Smith that he was eligible for consideration for boot camp; that Smith's counsel had made no effort to discover the criteria for acceptance into boot camp; and that Smith was, in fact, not eligible for consideration for boot camp under the criteria set by the Board of Pardons and Paroles. Thus, I conclude that the record shows that Smith's plea counsel misinformed Smith regarding a collateral consequence of his plea.

On appeal, however, the warden asserts that counsel's performance was not unreasonable and deficient because the Board of Pardons and Paroles did not publish its rules regarding a defendant's eligibility for boot camp. But, the fact that Smith's habeas counsel readily discovered the eligibility requirements for boot camp by communicating with the Board of Pardons and Paroles demonstrates that Smith's plea counsel, with limited effort, could have discovered those requirements. The majority downplays the ease with which habeas counsel learned of the boot camp requirements, concluding that "the habeas attorney had every reason to investigate and determine the reason why Smith was not accepted into boot camp." This conclusion, however, is easily turned against the majority. Because consideration for boot camp was of obvious significance to his client, and because he communicated to Smith that he was eligible for consideration for boot camp, Smith's counsel "had every reason to inves-

---

[4] See *Holmes v. United States*, 876 F2d 1545 (11th Cir. 1989); *Crabbe v. State*, 248 Ga. App. 314, 315-316 (546 SE2d 65) (2001); *Ostrander v. Green*, 46 F3d 347, 355 (4th Cir. 1995), overruled on other grounds in *O'Dell v. Netherland*, 95 F3d 1214, 1222-1223 (4th Cir. 1996); *Beavers v. Saffle*, 216 F3d 918, 925-926 (10th Cir. 2000); *Goodall v. United States*, 759 A2d 1077, 1082 (D.C. App. 2000); *Hill v. Lockhart*, 894 F2d 1009 (8th Cir. 1990), cert. denied, 497 U. S. 1011 (110 SC 3258, 111 LE2d 767) (1990).

tigate and determine" whether Smith was eligible for consideration for boot camp. In fact, nothing less should be expected of an attorney when he is advising a client on a matter of considerable importance to the client and the burden of accurately informing the client concerning that matter is minor. Thus, under these circumstances, I conclude that it was unreasonable for Smith's plea counsel to advise him regarding boot camp without having any knowledge with regard to it.[5]

The majority also erroneously concludes that plea counsel cannot be deemed to have acted unreasonably if he did not know of Smith's prior conviction. In this regard, I agree with the majority that the record is inconclusive regarding whether Smith's plea counsel knew of Smith's prior conviction. However, even assuming that Smith's plea counsel had not spoken with Smith concerning whether Smith had any prior convictions, I conclude that that fact would not change the analysis regarding Smith's ineffectiveness claim, as the fact remains that Smith's counsel understood the significance of Smith's interest in being considered for boot camp, and communicated to Smith that he was eligible for boot camp even though counsel had made no effort to discover the requirements for entry in the program. If counsel had discovered the requirements for boot camp, as he should have, he would certainly have inquired of Smith whether he had a prior conviction, and would have known whether Smith was eligible for the program.

Given that Smith's plea counsel knew that Smith attached great significance to his eligibility for boot camp, given that Smith's plea counsel advised Smith regarding boot camp without having knowledge of the criteria for boot camp, given the relative ease with which plea counsel could have discovered the eligibility requirements for boot camp, and given that counsel misinformed Smith about his eligibility for boot camp, I conclude that counsel's conduct fell below an objective standard of reasonableness.

2. In order to prevail on his ineffectiveness claim, Smith must show not only that his counsel's performance was deficient, but that, if not for counsel's errors, "there is a reasonable probability that . . .

---

[5] This case involves a parole boot camp system for which the Board of Pardons and Paroles sets the requirements. OCGA § 42-8-35.1, on the other hand, sets forth the circumstances under which a trial court may condition a sentence of probation upon the probationer successfully completing a probationer boot camp program. Significantly, § 42-8-35.1 (b) provides that a trial court may not place this condition of probation upon a probationer unless a probation officer first confirms that the Department of Corrections has granted provisional approval for the individual to participate in the boot camp program. Similarly, in the present case, Smith's plea counsel should not have advised Smith regarding the boot camp program without first determining whether he was eligible for consideration for the program.

he would not have pleaded guilty and would have insisted on going to trial."[6] In this regard, I conclude that the habeas court's findings of fact are inadequate to assist this Court on appellate review, and I therefore would remand the case for it to evaluate the prejudice prong of Smith's ineffectiveness claim and to enter appropriate findings of fact and conclusions of law.

For the foregoing reasons, I dissent to the majority's decision to affirm the trial court's judgment. I am authorized to state that Chief Justice Fletcher joins in this dissent.

DECIDED JULY 2, 2001.

*Marcus C. Chamblee*, for appellant.

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.

---

[6] *Hill*, 474 U. S. at 59. Accord *Williams*, 270 Ga. at 581.