## A03A1960. WHITESIDES v. THE STATE.
### (596 SE2d 706)

BARNES, Judge.

Randy Joseph Whitesides appeals the trial court's order denying his motion to withdraw the guilty plea he entered pursuant to an agreement with the prosecution. He contends the trial court abused its discretion by denying his motion because he was confused and did not understand the implications of a plea entered under *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970), and thus he "did not voluntarily and intelligently" conclude from among the alternative courses of action that the plea was in his best interest. He also contends he did not understand that he could be sentenced to confinement as a result of his plea. Whitesides further contends the trial court was clearly erroneous in denying his motion because his defense counsel failed to provide the advice reasonably necessary for him to intelligently determine whether it was in his best interest to enter an *Alford* plea.

The record shows that Whitesides was charged with two counts of aggravated child molestation and two counts of child molestation all involving the same victim, a mentally disabled teenage male. On the morning that his trial was to begin, the prosecutor announced that Whitesides had agreed to plead guilty to the two child molestation counts, and that the State would recommend a cap on the punishment. The prosecutor said that the State recommended a sentence of twenty years with ten to serve in confinement, a $1,000 fine with attendant surcharges, and sex offender supervised probation. The prosecution also agreed to dismiss the two aggravated child molestation charges. The transcript shows that in Whitesides' presence the prosecutor recited on the record, and in detail, the facts underlying the charges.

After being sworn, Whitesides testified that he was not under the influence of drugs, medicine, or alcohol, that he could read and write and that he understood the charges. He was advised that by pleading guilty he would give up the right to a jury trial, the right to be presumed innocent, the right to confront the witnesses against him, the right to subpoena witnesses, the right to testify himself and offer other evidence, the right to have an attorney, and the right not to incriminate himself.

Nevertheless, when asked whether he understood that by pleading guilty he would give up those rights, Whitesides had some reservations and sought advice from his attorney. Then, after his defense counsel announced that Whitesides would like a jury trial, Whitesides stated, "I'm innocent, Your Honor, and I want my name cleared. I want this case proven. I would never, ever — Well anyway,

I just — I don't understand these proceedings too much." The trial court responded, "You want to withdraw the plea, [defense counsel]? I'm not sure what that does to the recommendation if he withdraws the plea." After conferring with Whitesides again, the defense counsel stated that they were ready to proceed with the guilty plea.

The court then questioned Whitesides, "Are you ready to proceed with the plea of guilty?" The defense counsel responded that they would plead under *Alford*, and that is what he had talked about with Whitesides.

Whitesides then stated: "I am not guilty, but . . ." and the following colloquy took place between the prosecutor and Whitesides.

Prosecutor: "Mr. Whitesides, I understand that this plea today is under the auspices of [*North Carolina v. Alford*], where you are not admitting that these things happened, but after reviewing the evidence with your attorney you believe that it's in your best interest to avoid a trial, that there's a reasonable likelihood of conviction, and that the States's offer today is what you wish to take rather than risk a higher offer after trial or a higher recommendation; is that right?" After Whitesides said, "That's my understanding now," the prosecutor continued to question Whitesides about his understanding of the rights he would have at trial and that by pleading guilty he would give up those rights, including that by entering a plea he would give up the right to a trial. Whitesides responded, "Yes sir, I do now. And it would be left up to Judge Winegarden to make the sentence."

After the prosecutor stated that his sentencing hearing would be on Wednesday morning, Whitesides responded, "Yes, sir. Sir, why is it necessary to incarcerate me today before I'm even convicted? My mother. . . ." The court interjected, "Because you're pleading guilty today and this case happened years ago." Whitesides replied, "And I've not gone anywhere, nor am I considering suicide, never, ever, you know. And my mother needs me. My dad — I lost my dad the very same time. . . ."

The prosecutor continued: "Mr. Whitesides, if you'd like to do this, you know, we're ready to go ahead. We need to complete the questions though to go ahead and accept the plea. Are you ready to go forward with it?" Whitesides answered, "Yes, sir, I guess so."

The prosecutor then asked Whitesides if he understood that by pleading guilty he was giving up the right to a trial by jury, and the right to be presumed innocent. Whitesides responded, "I thought it would say that I'm not guilty or I'm not innocent," and his defense counsel stated, "What I think he's confused with is the [*North Carolina v. Alford*] what I've told him about that versus your question." Defense counsel stated, "It's kind of overlapping there. He's — that's his confusion."

The prosecutor then asked, "Do you understand that by entering your plea, and it's an *Alford* plea, you're not admitting your guilt, but rather based on the considerations that we've already put on the record you wish to carry forward with a guilty plea. You realize that by entering that plea that you will not have — you would not — you're giving up your right to a jury trial? Do you understand that?" and Whitesides answered, "Yes, sir, I guess so."

The court then stated, "Well, do you understand you can't plead guilty and have a jury trial? You can't do both. You've got to do one or the other. Do you understand you can't plead guilty — you're not going to plead guilty and then have a jury trial too. You don't get two; you get one or the other. Do you understand that?" Whitesides answered, "Yes, sir, I do."

The court continued, "Do you understand that right now you're presumed innocent? Do you understand that?" Whitesides asked, "That — that's the reason I was asking why, if I'm presumed innocent, why do I have to be incarcerated?" The court answered, "Because you're about to plead guilty I thought. What he's trying to tell you is you're presumed innocent, but once you plead guilty you're not presumed innocent anymore. You can't — you know, once you plead guilty you're not presumed innocent anymore. Once you plead guilty you don't have a jury trial anymore. Do you understand?"

After Whitesides answered, "Not wholly, not completely," his counsel stated, "I think where he's confused, Judge, is *North Carolina v. Alford*." The court replied,

> No. I don't understand why he doesn't understand. He doesn't seem to understand. He seems to think he can have a jury trial and plead guilty, and that he can plead guilty, but still be presumed innocent. I mean, most people get through these questions without a problem. . . . And he's getting bogged down in what seems to be rather straightforward questions.

Then Whitesides said, "Well, I did not understand. My misunderstanding here is that I wasn't pleading guilty; I was pleading neither guilty nor innocent." To which the prosecutor replied, "You understand that what we talked about under [*North Carolina v. Alford*] is a plea of guilty. You're not saying — you're not admitting what's alleged in the bill of indictment, but it is a plea of guilty based on everything you know about the case and all those considerations. Do you understand that?"

After Whitesides said, "Yes, sir, I do," the prosecutor asked him, "Is that what you wish to do?" He answered, "According to my attorney's advice, going along with my attorney's advice, I guess so."

The court then asked Whitesides, "Is that what you want to do? You want to go along with his advice or do you want to have a trial?"

The defense counsel said to Whitesides, "It's your decision, we've talked about that," and Whitesides stated, "Oh, Lord. I tell you, I, I just. . . ."

The court interjected, "You heard [the prosecutor] recite the facts that he's alleging; right? Basically you heard him say what this young man is going to say at the trial. You understand that?" Whitesides said, "Yes, sir," and the court asked the prosecutor if that was what the victim said before and whether the prosecutor expected the victim to say it again. After the prosecutor replied in the affirmative to both questions, the court asked, "Including the part about finding the Vaseline bottle next to the bed where he said it was?"

The prosecutor said that was correct, and the court stated, "So your argument would be, well, how does the boy know where the stuff is in the bedroom unless he's been there." The prosecutor again replied in the affirmative.

The court then said to Whitesides, "But you can have a trial, that's fine. Or you can plead guilty. And you don't have to say you did it, but if you plead guilty you are going to be sentenced." Whitesides answered, "I'll go along with what my attorney says."

The prosecutor then again questioned Whitesides to assure that he understood that by pleading guilty he would give up certain rights that he would have if he went to trial, including the right to a trial, the presumption of innocence, the right to cross-examine the State's witnesses, and the right to call witnesses at the guilt-innocence part of a trial, but he could call witnesses on sentencing. After Whitesides responded, "What chance do I have then?," the prosecutor continued, "Do you understand that you're entering a plea, that there's not going to be a trial? And because there's not going to be a trial, nobody is calling — the State's not going to call witnesses and you're not going to call witnesses either? Do you understand that?" Whitesides responded: "Yes, sir."

The prosecutor then questioned Whitesides about his understanding that he would give up his right to testify in his own behalf on guilt or innocence, that if he did not plead guilty the court would proceed with a trial by jury, that if he went to trial on the two charges he could be sentenced to twenty years confinement on each count, that his agreement with the State called for a sentence on both counts of twenty years confinement with ten to serve, that once he was sentenced on the child molestation counts, the State would dismiss the two aggravated child molestation counts, that the two aggravated child molestation counts carried a minimum of ten years confinement on each count, that he would be pleading to the two child molestation

counts and not the aggravated child molestation counts, but if he went to trial, he would face all four counts alleging four separate acts of child molestation.

Later, the prosecutor then said to Whitesides, "You've heard the State's recommendation, 20 years, to serve the first 10 years in confinement as a cap; $1,000 fine; and the special conditions of probation. Other than those, than that recommendation, has anyone made any promises to you to cause you to plead guilty this morning?" Whitesides answered, "No, sir."

The prosecutor next questioned Whitesides about whether he understood that the court does not have to accept the State's recommendation, but could sentence him to any sentence that was allowed by the law, and that twenty years to serve ten is the maximum that he would do. The prosecutor also advised Whitesides of all the general terms of probation and obtained Whitesides' assurance that he understood them and understood that if he violated those terms, his probation could be revoked and he could be required to serve additional time in confinement. The prosecutor gained Whitesides' assurances that he was freely entering his plea with an understanding of those conditions of probation, that no one had used force or threats to cause him to plead guilty, that he was satisfied with his defense attorney, that he understood all of the questions he answered, and that understanding those rights, he wanted to plead guilty to the child molestation counts.

The prosecutor next asked, "Under [*North Carolina v. Alford*], which we talked about earlier, it's your wish to enter your plea of guilty on counts 3 and 4?" Whitesides replied that he did, under those conditions.

Whitesides also stated that he understood all of the questions he had answered to the best of his ability, and that it was his decision to enter his plea freely and voluntarily. The trial court accepted Whitesides' guilty plea and reserved sentencing until later. Although Whitesides expressed concern that he was being incarcerated immediately after his plea was accepted, he voiced no other objections or concerns about the proceedings.

At the sentencing hearing the defense presented the testimony of a psychologist, and presented arguments for the court to impose probation. The trial court imposed a sentence of twenty years with the first ten years to be served in confinement and the remainder on probation, a fine of $1,000 plus surcharges, probation fees, and intensive sex offender probation.

Later, Whitesides moved to withdraw his guilty plea. After conducting a hearing, the trial court denied the motion. This appeal followed.

1. In Georgia,

[i]t is error for a trial court to accept a guilty plea without an affirmative showing that it was intelligent and voluntary since a guilty plea which is not voluntary and knowing is obtained in violation of due process and is therefore void. The entry of a guilty plea involves the waiver of three federal constitutional rights: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers, and the trial court has a duty to ensure that the defendant understands the constitutional rights being waived. The record must disclose the accused's voluntary waiver of those constitutional rights since waiver will not be presumed from a silent record.

(Citations and punctuation omitted.) *Foskey v. Battle*, 277 Ga. 480, 481-482 (1) (591 SE2d 802) (2004). After a guilty plea has been accepted and sentence has been pronounced, whether to allow a defendant to withdraw a guilty plea is within the discretion of the trial court, and the trial court's decision will not be disturbed on appeal unless the court has manifestly abused its discretion. *Threatt v. State*, 211 Ga. App. 630, 631 (3) (440 SE2d 61) (1994), overruled on other grounds, *Atlanta Independent School System v. Lane*, 266 Ga. 657, 658 (469 SE2d 22) (1996).

When a defendant enters a plea of guilty and subsequently challenges the validity of the guilty plea, the State may meet its burden of demonstrating the plea was intelligently and voluntarily entered by two means, (1) showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea; or (2) [completing] a silent or incomplete record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary.

(Citations and punctuation omitted.) *Stephens v. State*, 235 Ga. App. 756, 757-758 (510 SE2d 575) (1998).

The trial court had jurisdiction to allow the withdrawal of the guilty plea in this case because Whitesides' motion was filed within the same term of court[1] in which he was sentenced. Compare *Davis v. State*, 274 Ga. 865 (561 SE2d 119) (2002) (no jurisdiction to allow the withdrawal of a guilty plea after the term of court ended).

---

[1] The terms of court in the Gwinnett Superior Court begin the first Monday in January, March, May, July, and November and the second Monday in September. OCGA § 15-6-3 (20).

2. Whitesides first contends the trial court erred by denying his motion to withdraw his guilty plea because he did not understand the nature of an *Alford* plea and thus did not voluntarily and intelligently plead guilty. According to Whitesides, he did not understand the "inherent conflict of a plea entered under *North Carolina v. Alford*." Although Whitesides testified at the motion hearing that he did not understand that his plea would culminate in a guilty plea, we are satisfied that the extended discussion in the record during his plea hearing adequately demonstrates that he sufficiently understood the nature of an *Alford* plea. Consequently, we do not find that the trial court abused its discretion by denying Whitesides' motion on this ground. To the extent that his testimony at the hearing on his motion to withdraw contradicted his plea hearing testimony, credibility issues arose, which only the trial court could resolve. *McCloud v. State*, 240 Ga. App. 335, 336 (2) (525 SE2d 701) (1999).

3. We are also satisfied that the record of the plea hearing demonstrates fully that Whitesides comprehended that he could be sentenced to a term of confinement as a result of his plea. The record shows that he responded affirmatively when questioned on this very subject. Indeed, throughout the extended discussion during the guilty plea hearing, not once did Whitesides say that he believed that he would only receive probation if he pled guilty. Moreover, his own testimony during the hearing on his motion to withdraw his plea that he was told that he had a 90 percent chance of probation or that most likely he would be put on probation shows that he was aware he could be sentenced to confinement.

Additionally, the record set forth above shows that, although Whitesides wanted to assert his innocence, he also wanted the benefit of the plea agreement. And, while he grappled with the inherent conflict between maintaining his innocence and yet pleading guilty to obtain the benefits of the plea negotiations, he ultimately weighed the merits of each position, and chose to plead guilty.

Further, we find that the facts of the case as narrated by the prosecutor presented a sufficient factual basis for the trial court to accept Whitesides' *Alford* plea. *Brower v. State*, 230 Ga. App. 125 (495 SE2d 600) (1998). Consequently, the superior court did not err in accepting the defendant's *Alford* plea for lack of a factual basis. *Ellis v. State*, 243 Ga. App. 431, 432 (533 SE2d 451) (2000).

During the sentence hearing, Whitesides' counsel began by stating that the defense had "no problem" with the State's recommendation, but that they intended to present evidence for the trial court to consider a lesser or alternative sentence. To that end the defense presented the testimony of a psychologist to testify "on what we would like as an alternative to just 10 years in custody." The psychologist testified that, in his opinion, Whitesides should serve a

term of at least two years confinement to be followed by work release to intensive probation to probation all coupled with intensive psychological treatment.

At the conclusion of this testimony the defense counsel stated that Whitesides would "like the court to be as lenient as possible." Whitesides then expressed his willingness to do "work release, probation, extensive therapy, pay the fine, take polygraphs, whatever." Clearly, the import of this statement is that Whitesides was offering these other options to the court as a means of avoiding confinement.

Later, Whitesides testified that he did not understand he would have to serve confinement because his attorney told him that he would have "to serve probation and possibly go to a clinic." Even though the trial court reminded Whitesides that he was present at the plea hearing when the State's recommendation of ten years to serve was stated, Whitesides maintained that he nevertheless believed that he would only get some type of probation.

When questioned by the court, however, Whitesides' defense counsel stated, "Judge, I told him clearly that we would bring in the doctor and let the doctor make his recommendation and we would ask for probation for you to consider that as well. I told him that we could not guarantee. That was strictly up to you. State is asking for one thing and we are asking for another." Whitesides did not directly dispute these comments, but instead stated that he was taking his attorney's advice and he said that he would get "probation and not prison time."

The defense counsel reiterated, however, that he told Whitesides that he "would ask for what we recommended; probation. And the State would ask for what they, he knew what they were recommending. So, [I] told him that I couldn't make any guarantees. That's what we would ask for and it's up to you." Counsel denied that he told Whitesides that he would get probation; instead, he said he told Whitesides that he would ask for probation. We find that the trial court was authorized to decide whether to believe Whitesides or his counsel on this issue, and that obviously the court decided to give more credence to the counsel's statements. This was not error. *McCloud v. State*, supra, 240 Ga. App. at 336.

4. Whitesides also contends that the court erred by denying his motion to withdraw his plea because counsel did not provide the advice reasonably necessary for him to determine whether it was in his best interest to make an *Alford* plea. We disagree. This argument is couched in terms of whether Whitesides received effective assistance of his defense counsel. To show ineffective assistance of counsel, a defendant who pleads guilty must show that his counsel erred and that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.

The trial court's findings of fact are subject to a "clearly erroneous" standard of review. *Johnson v. State*, 260 Ga. App. 897, 899-900 (2) (581 SE2d 407) (2003).

We find that the evidence shows that Whitesides sufficiently understood the benefits of the agreement reached with the State and the potential consequences of rejecting the plea agreement and going to trial. On one hand, by pleading guilty he could assure that he would serve no more than ten years confinement, and on the other, he would face the likelihood of conviction on four separate counts, two of child molestation and two of aggravated child molestation. If convicted only of the aggravated child molestation counts, he would face a minimum of 20 years confinement, or twice what he would receive under his agreement with the State.

Although it is obvious from the record that Whitesides did not want to go to prison at all, it is equally obvious that he measured his options and determined that serving ten years in confinement was better than serving twenty or more years in confinement. We do not find that the trial court erred by denying the motion on this basis.

Further, if the claim of ineffectiveness of counsel relates to matters outside of the record, the trial defense counsel's testimony generally will be needed to evaluate the claim. See *Dawson v. State*, 258 Ga. 380, 381 (3) (369 SE2d 897) (1988). In this instance, the issue concerns what advice the trial defense counsel gave regarding an *Alford* plea, and, therefore, we find that the testimony of the defense counsel was required. Without the trial defense counsel's testimony, Whitesides has not met his burden of showing that the advice given by his defense counsel constituted ineffective assistance of counsel. See *Hines v. State*, 248 Ga. App. 752, 756 (3) (548 SE2d 642) (2001).

Additionally, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v. Washington*, 466 U. S. 668, 691 (104 SC 2052, 80 LE2d 674) (1984); *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995). Therefore, even if we were to conclude that Whitesides' defense counsel had not adequately explained to him the nature of an *Alford* plea before the guilty plea hearing, we would not reverse the trial court on this basis because the record before us shows that Whitesides was informed fully and completely about the nature of such a plea during the hearing on his guilty plea.

Accordingly, we do not find that the trial court erred by denying the motion to withdraw Whitesides' guilty plea.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MARCH 10, 2004.

*Douglas W. Auld*, for appellant.
*Daniel J. Porter, District Attorney, James M. Miskell, Assistant District Attorney*, for appellee.